

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| LUCRETIA SMITH,<br>           Plaintiff,<br><br>vs.<br><br>BI-LO, LLC, SOUTHEASTERN GROCERS,<br>INC., ATLANTIC WEST-BAMBERG, LLC,<br>and JOHN DOE,<br>           Defendants. | Civil Action No. 5:19-01964-MGL |

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION TO REMAND**

## I.    INTRODUCTION

This is a common law negligence action based upon Plaintiff Lucretia Smith's (Smith) alleged fall at a local Bi-Lo grocery store. The Court's jurisdiction over this matter is contested; however, Defendants Bi-Lo, LLC (Bi-Lo), Southeastern Grocers, Inc. (Southeastern), and Atlantic West-Bamberg, LLC (AWB) (collectively, Defendants) suggest the Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

Pending before the Court is Smith's motion to remand this action to the Bamberg County Court of Common Pleas (motion). Having carefully considered the motion, the notice of removal, the responses, the record, and the applicable law, it is the judgment of the Court the motion will be denied.

## II. FACTUAL AND PROCEDURAL HISTORY

On October 21, 2015, Smith visited a Bi-Lo store located at 3386 Railroad Avenue, Bamberg, South Carolina 29003 (the Store). As Smith entered the Store, she allegedly tripped on the corner of a rug causing her to fall. Smith claims several significant injuries as a result of her fall.

Smith eventually brought suit against Defendants and an unidentified Bi-Lo store manager—referred to in Smith's complaint as John Doe—in the Bamberg County Court of Common Pleas. According to the record, (1) Smith is a resident of South Carolina, (2) Bi-Lo is a Delaware LLC that operated the Store, (3) Southeastern is a Delaware corporation—with its principal place of business in Florida, making it a citizen of both states—that owns Bi-Lo, *See* 28 U.S.C. § 1332(c)(1) (stating a corporation is a citizen of both the state in which it is incorporated and the state that is its principal place of business) (4) AWB is a South Carolina corporation, who owns the property and the building where the Store is located, and (5) John Doe is a resident of South Carolina.

Piggly Wiggly Carolina Company, Inc. (Piggly Wiggly) originally leased the Store from AWB through a September 16, 2002, Lease Agreement (the Lease Agreement), which the Court will discuss below. Thereafter, Piggly Wiggly assigned its rights and responsibilities under the Lease Agreement to Bi-Lo through a November 11, 2013, Lease Assignment and Assumption Agreement (the Lease Assignment), which the Court will also analyze below.

After Smith filed this action, Defendants removed it to this Court. Smith then filed a motion to remand, and Defendants filed their responses. The Court, having been fully briefed on the relevant issues, is prepared to adjudicate the motion.

## III. STANDARD OF REVIEW

Federal courts have original jurisdiction over two types of cases: federal questions under 28 U.S.C. § 1331, and diversity actions under 28 U.S.C. § 1332. Neither party alleges the existence of a federal question, so if this case is removable at all, it must be under the diversity statute. Complete diversity jurisdiction exists when the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." *Id.* § 1441(a). But, "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* § 1441(b)(2).

In a case such as this, "[t]he burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). "From the beginning of the diversity jurisdiction, the rule in actions commenced by plaintiffs in federal court has been that the citizenship of the parties at the time of commencement of the action determines whether the requisite diversity exists." *Rowland v. Patterson*, 882 F.2d 97, 98 (4th Cir. 1989).

The Court is "obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (quoting *Mulcahey*, 29 F.3d at 151). "Therefore, '[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary.'" *Id.* (quoting *Mulcahey*, 29 F.3d at 151). Moreover, when

considering a motion to remand, the Court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1163-64 (5th Cir. 1988).

IV.     **DISCUSSION AND ANALYSIS**

As the Court noted above, it has diversity jurisdiction in those cases in which the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). There is no dispute with regards to whether the amount in controversy requirement is satisfied here. Whether the complete diversity of citizenship mandate is met is the basis of the disagreement before the Court.

To recap, Smith is a citizen of South Carolina; Bi-Lo is a citizen of Delaware; Southeastern is a citizen of both Delaware and Florida; AWB is a citizen of South Carolina; and John Doe is a citizen of South Carolina. Consequently, if the Court were to look solely at the parties' citizenship, it would conclude there is no diversity jurisdiction, inasmuch as the plaintiff, Smith, and two of the defendants, John Doe and AWB, are citizens of South Carolina.

Turning briefly to John Doe, Defendants contend his citizenship should be disregarded when deciding the diversity jurisdiction question because of his fictious name. Smith fails to counter Defendants' argument. Regardless, Section 1441(b)(1) provides "the citizenship of defendants sued under fictious names shall be disregarded." Therefore, because John Doe was sued under a fictious name, his citizenship—for purposes of determining whether removal is proper—will not be considered.

The primary dispute here is Defendants' claim in their notice of removal that Smith fraudulently joined AWB to defeat diversity jurisdiction. Smith argues in her motion, however,

that she did not. As such, she claims there is not complete diversity between the parties, thereby requiring this case be remanded.

Fraudulent joinder occurs when a removing party demonstrates either, "outright fraud in the plaintiff's pleading of jurisdictional facts," or "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)). Defendants do not allege outright fraud in the jurisdictional pleadings, so if fraudulent joinder exists, it must be because there is no possibility of recovery against AWB.

"The burden on the defendant claiming fraudulent joinder is heavy; the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Marshall* F.3d 229 at 232-33 (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992). A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted. 14A Charles A. Wright et al., Federal Practice & Procedure § 3723, at 353–54 (1985).

Smith makes four primary arguments in her motion in opposition to Defendants' fraudulent joinder argument. The Court will now address each in turn.

### A. *Whether the terms of any agreement between the Defendants are unknown, invalid, or otherwise subject to factual dispute.*

Smith argues the terms of any agreement between AWB and Bi-Lo are unknown, invalid, or are subject to dispute. This argument has several subparts.

First, Smith emphasizes AWB and Piggly Wiggly entered into the Lease Agreement, not AWB and Bi-Lo, and thus the Lease Agreement does not control Defendants' responsibilities with

respect to the Store, nor does it provide the exact terms between AWB and Bi-Lo. This argument is unavailing.

Although Piggly Wiggly and AWB originally entered into the Lease Agreement, Piggly Wiggly subsequently assigned the lease to Bi-Lo through the Lease Assignment, which incorporates and refers to the Lease Agreement between AWB and Piggly Wiggly.

In particular, Paragraph A of the Lease Assignment states,

> Assignor [Piggly Wiggly] is the lessee under that certain Lease Agreement dated September 16, 2002, between [AWB] as landlord (the "Landlord"), and Assignor [Piggly Wiggly], as tenant (as amended, supplemented, replaced or otherwise modified from time to time, the "Lease"), whereby Assignor [Piggly Wiggly] leases from Landlord [AWB], and Landlord [AWB] leases to Assignor [Piggly Wiggly], certain premises located at 3386 Railroad Avenue, Bamberg, South Carolina 29003, said Lease being more particularly described on Exhibit A attached hereto and made a part hereof.

Lease Agreement ¶ A.

By incorporating the Lease Agreement into the Lease Assignment, Bi-Lo and AWB's relationship is governed by the terms of the Lease Agreement. *See Stewart v. Morris*, 65 S.E. 1044, 1046 (S.C. 1909) ("[W]hen one instrument of writing refers to another for its terms, the instrument referred to should be construed in connection with the first instrument in ascertaining the intention of the parties.") This fact is further supported by Paragraph C of the Lease Assignment, which states

> It is the desire of the parties hereto that Assignor [Piggly Wiggly] assign, transfer and convey to Assignee [Bi-Lo] all of its rights, titles, interests, benefits and privileges in, to and under the Lease and that Assignee [Bi-Lo] accept such assignment and assume the obligations of Assignor [Piggly Wiggly] under the Lease.

Lease Assignment ¶ C. *See Twelfth RMA Partners, L.P. v. Nat'l. Safe Corp.*, 518 S.E.2d 44, 46 (S.C. Ct. App. 1999) ("When a contract is assigned, the assignee should have all the same rights and privileges . . . as the assignor.").

Next, Smith contends the Lease Assignment is invalid because there is no evidence AWB was provided with written notice of the Lease Assignment, as required under Paragraph 23 of the Lease Agreement. The Court disagrees with Smith's argument.

Paragraph 23 does, in fact, state, "Tenant may, without the consent of Landlord but upon written notice to Landlord, assign this Lease or sublease any portion of the Demised Premises." Lease Agreement ¶ 23. And, there is no evidence in the record indicating Piggly Wiggly provided written notice of the Lease Assignment of the Lease Agreement to Bi-Lo.

Defendants, inexplicably, fail to address the issue. Nevertheless, the Court easily concludes AWB received constructive notice of the Lease Assignment through (1) Piggly Wiggly's departure, (2) Bi-Lo's continued presence on the property, (3) Piggly Wiggly no longer making lease payments to AWB, and (4) Bi-Lo beginning to make lease payments to AWB. And constructive notice is sufficient. *See Multimedia Pub. of S.C., Inc. v. Mullins*, 431 S.E.2d 569, 572 (S.C. 1993) ("It is settled law in South Carolina that when a person has notice of facts as are sufficient to put him on inquiry, and those facts, if pursued with due diligence, would lead to knowledge of other facts, he must be presumed to have knowledge of the undisclosed facts.").

Smith also notes Paragraph 23 of the Lease Agreement indicates "Piggly Wiggly Carolina Company, Inc., as tenant shall remain liable and responsible under this Lease if assigned or sublet." Pl's] Mot. to Rem. at 6 (citation omitted). And, because Piggly Wiggly is a South Carolina corporation, Smith contends, its addition to this lawsuit would destroy diversity jurisdiction. Smith is partially correct.

7

Paragraph 23 of the Lease Agreement does state, "Tenant [Piggly Wiggly] shall remain liable and responsible under this Lease if assigned or sublet . . . ." Lease Agreement ¶ 23. Regardless, the Court is concerned with the citizenship of only the parties presently before it. *Rowland v. Patterson*, 882 F.2d 97, 98 (4th Cir. 1989) ("From the beginning of the diversity jurisdiction, the rule in actions commenced by plaintiffs in federal court has been that the citizenship of the parties at the time of commencement of the action determines whether the requisite diversity exists.").

Additionally, Smith argues there could be another agreement between AWB and Bi-Lo. But, this unsupported assertion, without more, is insufficient to create a factual dispute.

Finally, Smith somewhat halfheartedly argues the Court should not consider the Lease Agreement and Lease Assignment in deciding her motion inasmuch as the two documents have not been properly authenticated. The Court is unpersuaded.

Smith has failed to cite to any authority, binding or otherwise, that all prerequisites of admissibility must be satisfied before the Court can consider documents such as these when ruling on a motion to remand. The Court is not admitting them into evidence at this time.

Nevertheless, inasmuch as it appears these two agreements could be made admissible at trial, the Court thinks it is appropriate to consider them for the purpose of this pretrial ruling.

### B. *Whether Smith has any possibility of recovery against AWB.*

Smith also maintains she has a possibility of recovery against AWB because her complaint sufficiently states a negligence cause of action against it. Once again, the Court disagrees.

Under South Carolina law, to state a cause of action for negligence, a plaintiff must plead three elements: (1) a duty, (2) breach of the duty, and (3) damages proximately resulting from the breach. *Kleckley v. Nw. Nat'l Cas. Co.*, 526 S.E.2d 218, 221 (S.C. 2000).

Defendants' claim Smith cannot possibly recover against AWB for negligence because AWB did not owe Smith a duty under these facts. To support their argument, Defendants direct the Court's attention to the Lease Agreement, the Lease Assignment, *Byerly v. Connor*, 415 S.E.2d 796, 798 (S.C. 1992), and Smith's deposition.

    1.    *The Lease Agreement*

Paragraph 14 of the Lease Agreement, titled "**MAINTENANCE OF COMMON AREAS,**" states, in relevant part, "Landlord [AWB] shall, during the term of this Lease maintain the Common Areas." Lease Agreement ¶ 14. Paragraph 11 of the Lease Agreement defines "Common Area" as including all other areas not occupied by building structures. *Id.* ¶ 11. In simpler terms, under the Lease Agreement, common areas do not encompass the Store itself. *Id.* ¶ 11.

Paragraph 15, titled "**REPAIRS**," states, in relevant part, "Tenant shall, throughout the term of this Lease and any extensions thereof, at its own expense, maintain in good order and repair its Store Unit, except those repairs expressly required to be made by Landlord." *Id.* ¶ 15. Paragraph 15 expressly requires the Landlord to "keep in good repair and replace when necessary" only the surface of the parking lot, the roof, latent defects in foundations, the exterior walls, and underground utility pipes outside the exterior walls. *Id.*

Paragraph 2 of the Lease Agreement defines "Store Unit" as a 20,500 square foot building, "situated at 3386 Railroad Avenue, Bamberg, State of South Carolina. . . and the inside dimensions of which shall be approximately 20,500 square feet." *Id.* ¶ 2. When all these provisions are read together, they indicate AWB was responsible for areas outside the Store, whereas the tenant, Piggly Wiggly, and thereafter Bi-Lo, was responsible for the areas inside the Store.

9

## 2. *The Lease Assignment*

In addition, Defendants argue the Lease Assignment validly incorporates the Lease Agreement such that the Lease Agreement governs the Defendants' relationship. In particular, Defendants claim "[e]ven a cursory reading of the Lease and Assignment together . . . shows that the documents flow together and create an unquestionable contract between Bi-Lo and AWB." Def.'s Mot. in Opp. at 7.

As noted above, Piggly Wiggly was the original tenant under the Lease Agreement. Bi-Lo, however, became the new tenant through the Lease Assignment, and as such was bound by the terms of the Lease Agreement. Therefore, contrary to Smith's assertions otherwise, Bi-Lo and AWB's relationship was governed by the Lease Agreement.

## 3. *Byerly v. Connor*

In *Byerly v. Connor*, the South Carolina Supreme Court held,

> when land is occupied by a lessee, as in this case, the law of property regards the lease as equivalent to a sale of the premises for the term of the lease. In the absence of an agreement to the contrary, the lessor surrenders possession and control of the land to the lessee. After the premises are surrendered in good condition, the lessor typically is not responsible for hazardous conditions which thereafter develop or are created by the lessee.

415 S.E.2d 796, 798 (S.C. 1992). Any exception to this general rule would "be created by statute, contract, relationship, status, property interest, or other special circumstances." *Id*.

Thus, South Carolina's general rule absolves a lessor or landlord from liability, with respect to conditions, which are created by the lessee or tenant, as soon as the lessor surrenders control of the subject property. The sole exception that might would apply here would be if a contrary contractual agreement between the lessor and lessee exists. In this case, however, rather than

10

contradicting *Byerly*'s general rule, the Lease Agreement, as described above, implements it by holding AWB responsible only for areas outside the Store.

Smith attempts to neutralize *Byerly* by arguing "Defendants have also not established that the subject premises was in-fact surrendered in good condition." Pl.'s Mot. to Rem. at 8. Although not altogether clear, it appears she is referring to when Bi-Lo assumed the Lease Agreement. Defendants' inexplicably fail to address this argument, too.

Nevertheless, under South Carolina law, an assignee stands in the shoes of the assignor. *Thomasson v. Ocean Point Golf, Inc.*, 386 S.E.2d 282, 286 (S.C. Ct. App. 1989) (citing *W.M. Kirkland, Inc. v. Providence Washington Ins. Co.*, 216 S.E.2d 518, 520 (S.C. 1975). There is no argument the store was not surrendered in good condition to Piggly Wiggly. Therefore, inasmuch as Bi-Lo, the assignee, stands in the shoes of Piggly Wiggly, the assignor, *Thomasson* leads to the unmistakable conclusion the store was surrendered to Bi-Lo in good condition.

    4.  *Smith's deposition*

During Smith's deposition, Smith testified as follows:

> Q: Okay. And just–I think this is clear, but just to make it clearer. The rug, or the mat, as we've been calling it, was on the inside of the store when this happened?
> A: It was on the inside. Yes, sir.

Dep. Smith 58:23 – 59:2. Later on in the deposition, Smith's testimony includes the following exchange:

> Q: A couple more questions about the incident itself, Ms. Smith, and then we're pretty close to being done. When you fell and had your hands outstretched, was your entire body still all the way inside the store?
> A: Yes, sir.
> Q: Okay.
> A: I was inside the store.
> Q: No part of your body was on the threshold of the door, or in the doorjamb, or outside, correct?

11

        A:      No, sir.
        Q:      Is that correct?
        A:      I was inside.
        Q:      Okay.

Dep. Smith 91:10-24.

Therefore, Smith's deposition testimony proves the mat she tripped over was located entirely within the Store, and when she fell her body landed completely within the confines of the Store. And, as explained above, Bi-Lo, not AWB, is responsible for the area inside the store.

In sum, as per the Lease Agreement and Lease Assignment, AWB was responsible for conditions outside the Store, Bi-Lo was responsible for conditions inside the Store, *Byerly* holds the same, and Smith's deposition testimony proves her alleged injuries took place completely within the confines of the Store. This leads the Court to hold Smith has no possibility of recovery in this lawsuit against AWB.

### C. *Whether Defendants' notice of removal is inadequate.*

Smith next states Defendants' notice of removal is inadequate. Smith questions whether Defendants' notice of removal provided "any proper basis . . . for their assertion that Defendant AWB is a sham defendant." Pl's Mot. to Remand at 9. It appears Smith is making an argument based on the fraudulent joinder pleading standard. See *Updike v. West*, 172 F.2d 663, 665 (10th Cir. 1949) ("But fraudulent joinder, like any other allegation of fraud, must be pleaded with sufficient certainty to justify the conclusion that the joinder was a fraudulent device to prevent removal. A mere allegation of fraudulent joinder is not sufficient.")

Smith's position is without merit. Defendants' notice of removal, contrary to Smith's argument, goes well beyond mere allegations of fraudulent joinder and instead includes specific assertions and documentation, which adequately support their fraudulent joinder argument.

### D. *Whether Defendants' notice of removal is improper.*

Finally, Smith takes issue with "Defendants' attempt to sway the court through various documents, which is improper." Pl.'s Mot. to Remand at 10. Smith further claims, "the documents filed by Defendants in support of removal evidence a clear and blatant attempt to litigate the legal and factual merits of the underlying case." *Id*. The Court is unconvinced.

"In deciding whether the plaintiff has any chance of recovery against defendant, the [C]ourt 'is not bound by the allegations of the pleadings but may instead consider the entire record.'" *AIDS Counseling & Testing Ctrs. v. Group W Tele., Inc*., 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting *Dodd v. Fawcett PublBi'ns, Inc.,* 329 F.2d 82, 85 (10th Cir. 1964)). Thus, the Court may, as it has done here, properly review Smith's deposition, the Lease Agreement, and the Lease Assignment, when making its fraudulent joinder determination.

## V. CONCLUSION

In light of the foregoing discussion and analysis, the Court is of the opinion Smith's motion to remand should be **DENIED**.

**IT IS SO ORDERED.**

Signed this 2nd day of December, 2019, in Columbia, South Carolina.

s/ Mary Geiger Lewis<br>
MARY GEIGER LEWIS<br>
UNITED STATES DISTRICT JUDGE